E. B. LAZENBY, Admr.; et al. v. ELNORA SACHSE, et al.

Western Section.  October 19, 1928.

(1)

G. P. Douglass, of Memphis, for appellant.
Hugh Stanton and A. J. Calhoun, of Memphis, for appellee.

SENTER, J. The administration of the estate of Mrs. Clara E. Grant, deceased, was transferred from the probate court of Shelby county to the chancery court of Shelby county, where the estate is being wound up as an insolvent estate.

The appeal in this cause is from the decree of the Chancellor sustaining the exceptions to the report of the Clerk and Master as to the claim of petitioner, Miss Della Blockinger, for alleged services alleged to have been rendered by Miss Della Blockinger to Mrs. Clara E. Grant for a period of six years prior to the death of Mrs. Grant, in the sum of $1440, being seventy-two months at $20 per month.

There was an order of reference made by the Chancellor to the Clerk and Master to take proof and report on several items and matters, and among which was the amount of just claims against the estate. The only item in the report excepted to was the claim of Miss Blockinger, covering $125 for alleged loaned money by Miss Blockinger to the deceased, and the $1440 claimed for services rendered during the last six years of the lifetime of the deceased. These items were allowed as proper claims by the Clerk and Master, and upon exceptions being filed thereto, the Chancellor held that the $125 for alleged loaned money was supported by a preponderance of the evidence, and overruled the exceptions as to the $125. The Chancellor held that the claim of $1440 for alleged services was not supported by the evidence, and sustained the exceptions as to that item, and so decreed. From this decree Miss Blockinger has appealed to this court and has assigned this action of the Chancellor as error.

Appellant was invited by Mr. Clara E. Grant, who was a widow, in 1907 to live in her home, and Miss Blockinger went to live in the home of Mrs. Grant in 1907, a short time after the death of Mrs. Grant's husband, and continued to live in the home of Mrs. Grant until Mrs. Grant's death in 1927, a period of more than twenty years.

It also appears that Mrs. Grant owned her home and other real estate in Memphis from which she derived rentals amounting to approximately $70 per month, and probably had other sources of revenue. Mrs. Grant was about seventy-six years of age at the time of her death, and Miss Blockinger was about eighty years

of age. These two old ladies had been close personal friends for many years, and upon the death of Mrs. Grant's husband in 1907, she invited Miss Blockinger to come into her home and live with her. Miss Blockinger was without any means of her own, but supported herself as a seamstress, and continued to ·do sewing for the public as long as she lived in the home with Mrs. Grant. She never paid any board to Mrs. Grant during the twenty or more years that 'she lived in the home, but according to her evidence she bought some of the groceries used by them, and assisted Mrs. Grant in the housework. A part of the time Mrs. Grant had some roomers and boarders, and Mrs. Grant and Miss Blockinger did the housework.

During the entire time that Miss Blockinger lived in the home with Mrs. Grant she did not pay any board or room rent, this was furnished .her free by Mrs. Grant, except some small contribution made by Miss Blockinger in purchasing some small quantity of provisions used by them and Miss Blockinger also did some sewing for Mrs. Grant.

Miss Blockinger admits in her evidence that there was never any agreement between herself and Mrs. Grant with reference to Mrs. Grant compensating her for any service that she rendered, or for her help in ·assisting in the housekeeping, and that she never asked Mrs. Grant for any money during the entire time she was living in the home, and Mrs. Grant never offered to pay her anything during the entire time. Miss Blockinger never at any time prior to the death of Mrs. Grant made any demand or claim upon Mrs. Grant for compensation. Three other witnesses testified that Miss Blockinger assisted Mrs. Grant in the housework, and seemed to take the lead in the housekeeping, and that she was also doing public sewing during the time she lived in the home with Mrs. Grant. These witnesses testified that the service rendered by Miss Blockinger was worth $20 per month. On this subject of the claim of Miss Blockinger, the Chancellor in a written opinion filed by him, stated as follows:

"(2) Passing to a consideration of Miss Della Blockinger for $1440 for services rendered to Clara E. Grant, it appears that Miss Blockinger was permitted to testify as to statements made by the deceased, and to transactions with the deceased, with respect to. alleged services, without objection. Her testimony must, therefore, be considered. It appears from the testimony of Miss Blockinger and other witnesses that she lived with Mrs. Grant for a period of nearly twenty years and was with her when she died. Claimant became acquainted with Mrs. Grant in 1874, and went to live with her in September,

1907. A close friendship existed between the two. Miss Blockinger was asked:

"'When you went there shortly after her husband died in 1907, you didn't go there with the understanding that you were to receive pay at all?

"'A. Not exactly, she came after me to go and live with her; she said she was all alone and I was all alone and for me to come and stay with her, come and stay at her house, and so I went.'

"It appears that these two old ladies, Miss Blockinger was eighty-one years of age, lived together in Mrs. Grant's house and mutually aided, assisted and nursed each other, 'one dependent on the other.' No agreement to pay Miss Blockinger wages or otherwise compensate her is proven. The situation, relations and conduct of the parties were such as to make it appear that the services Mrs. Blockinger rendered Mrs. Grant by way of helping in the household work, were rendered without any intention or expectation of payment or compensation. No implied agreement to pay or compensate Miss Blockinger can be held on this record, to have existed. . . .

"In my opinion, these two old ladies, Mrs. Grant seventy-four when she died, and Miss Blockinger eighty-one when she testified, for mutual convenience and advantage, made their home together, there in Mrs. Grant's house. Miss Blockinger had no intention of charging for her services, and Mrs. Grant had no intention of charging Miss Blockinger for board. They lived there as two sisters would live. Certainly Mrs. Grant had no notice, actual or implied, that Miss Blockinger intended to make a charge for her services. On the contrary, it would have been most reasonable for Mrs. Grant to believe that Miss Blockinger had no intention of charging for her assistance in the household work.

"In my judgment, the making of this claim for $1440 is a pure afterthought on the part of the claimant. It appears that certain of the heirs are not adverse to paying Miss Blockinger. If any of the heirs so desire, they may individually compensate her. The administrator, and the guardian ad litem for the minor, object to such payment, and stand on the record. . . ."

After a careful examination of the evidence, and especially the deposition of Miss Blockinger, we are clearly of the opinion that the Chancellor reached the correct conclusion.

Rev. E. H. Demetriou, a witness for the claimant, and the pastor of the Lutheran Church in Memphis, of which both appellant and

Mrs. Grant were members, in the course of his evidence, made some reference to certain conversations which he had had with Mrs. Grant, and in which she expressed a desire to aid in establishing a parochial school for his church in Memphis, and also expressed some intention of making some provision for Miss Blockinger. However, this witness did not testify to any conversations had with Mrs Grant in which she expressed any belief or understanding that she was under any legal obligation to compensate Miss Blockinger, or that could be in any sense construed that she owed Miss Blockinger anything for services rendered. He testified that Mrs. Grant and Miss Blockinger lived in the home together just as sisters would live. Mrs. Grant died intestate, owning real estate and other property to the value of about $10,000, and owned some debts of $1,000 or $1,200, in addition to the claim made by Miss Blockinger.

Appellant, in the excellent brief filed, cites several cases in support of the contention that where services had been rendered by one person to another, and the services had been accepted by the person to whom the same were rendered, in the absence of a specific contract of compensation, there is an implied agreement to pay for such services on the basis of a quantum meruit. (Lewis v. Lewis, 75 Ark., 191, 87 S. W., 134; Ford v. Ward, 26 Ark., 360; 1 Beach Modern Contracts, 642; Marx v. Marx, 127 Md., 373, 96 Atl., 544; Wallace v. Schaub, 81 Md., 594.)

We think there is no question as to the soundness of the rule where the facts warrant the application. As stated by Mr. Beach: "When one person renders services for another, which are known to and accepted by him, the law ordinarily implies a promise to pay therefor." And as stated in Marx v. Marx, supra, "as between persons not members of the same family, the mere fact of rendering services useful to the party to whom they are rendered furnishes prima-facie evidence of their acceptance, and in the absence of some proof to the contrary, raises an obligation to pay what they are worth; there being no proof of special value."

However, each case must be governed and controlled by the peculiar facts and circumstances. After all, it resolves itself into a question of intention. If under all the facts and circumstances it appears that the person rendering the services did not, at the time the services were rendered intend to make a change for same, and the person to whom the services were rendered, did not expect to pay for same, there can be no implied contract or agreement obligating the person receiving the services to pay for the same.

In the case of Taylor v. Lincumfelter, 1 Lea, 88, on this subject it is said:

"And it may be said of the claim to an interest in the property on the score of services without contract as of the claim in the alternative, for compensation for money, that nothing is better settled in the law, or has a sounder foundation in good sense, than that a person will not be allowed to demand compensation for services which were rendered gratuitously."

Numerous cases are cited in support of the above statement.

In Hayes v. Cheatham, 6 Lea, in the sixth headnote, under the head of "Compensation.—Gratuitous Services" is this statement.

"A person cannot make a charge for services which were gratuitously rendered at the time."

In the body of the opinion in that case it is said:

"That a person cannot charge for services rendered gratuitously, is settled law." (Citing Taylor v. Lincumfelter, supra.)

We find no error in the decree of the Chancellor in sustaining the exceptions to the Master's report complained of under the assignment of error by appellant.

It results that the decree of the Chancellor is affirmed. The cost of this appeal will be paid by appellant. The cause will be remanded to the end that the $125 claim of appellant against the estate may be applied to the cost of the cause and of this appeal, the appeal being in forma pauperis.

Owen and Heiskell, JJ., concur.